Good morning, Your Honors. May it please the Court. Nathan Zazzle on behalf of the petitioners, Libardo Riveros and his family, his wife and two children. I'd like to reserve two minutes' time for rebuttal. What we're asking this Court is to take the same view as the immigration judge took at the conclusion of the evidentiary record in this matter. And that was on October 23rd. When the case was fresh in his mind and two months before the written decision, he indicated to counsel that argument would not be necessary as he viewed the dispositive issue in this case to be credibility. And this case spanned over many hearings and credibility was certainly an issue. But the judge wanted two months to review that issue only. In other words, asylum should have been granted in this case if the testimony of Libardo was granted, was given full evidentiary weight, which it ultimately was. He found positive credibility in his decision in December of 2023. However, the judge did deny the case on three grounds. Number one was the issue of nexus under the one central reason test. The second ground was whether or not the government of Columbia was unwilling or unable to protect the petitioners. And the third was the issue of internal relocation. Now, turning to the issue of nexus, we submit that on this record, a reasonable fact finder would be compelled to find that under mixed motive analysis, one central reason for Libardo's persecution was on account of his actual and imputed political opinion and not just because of his automotive skills at Hino Motors. He was active in groups that were considered anti-FARC. That is, they contributed to the community and they were viewed as enemies by FARC. Direct proof of this in the record is he was called a traitor by FARC. He was told to stop community outreach as it interfered with FARC. And this is what he was told by his persecutors. Can I ask, are you arguing that he would have been persecuted for this political reason alone or just that he wouldn't have been persecuted for the automotive reason alone? It's a but-for. Right. Are you saying sufficient cause or but-for cause of this for the political anti-FARC view? Yeah, I would say it would be but-for, that he would have been persecuted on this ground alone. So that's a sufficient cause then? Oh, sorry, sufficient. Right, yeah, yeah. And what is the best evidence of that? Because it seems that in most of the interactions, as I understand it, the persecutors changed the topic to the automotive skills. Right. So the case law essentially says it can be a cause, and it doesn't even have to be the dominant cause. So the automotive, I will agree, was likely a more dominant cause. But this cause alone as political opinion was sufficient. For example, calling him a traitor, they wouldn't call him a traitor just if it didn't have to do with not joining their cause. And they specifically told him frequently, you have to join our cause. And the cause is, let's just remember, FARC is not just an organized criminal group like the mafia in the United States. This is actually an armed revolutionary group which sought to overturn the government of Colombia. They've been fighting for decades, and the government has not been able to control this group. So this is essentially considered in Colombia a terrorist or a political group. What do you think exactly the error was that the agency made on this issue? On this issue? Oh, that the fact that they wanted his automotive skills, while that was a dominant cause, that that somehow overrode the fact that he was also persecuted on account of his political opinion. And I would just note, if we want to distinguish cases that had much less than this, in Parasimova v. Mukasey, this Court found that an ethnic slur standing alone was not sufficient. So just one ethnic slur is not enough to say that's one central reason. And the Court has even boiled the one central reason test down to simply saying a cause. Now, a cause is also what the withholding standard is. But they boil it down to saying a cause, and I think that's significant. Well, hasn't the Court said that the question is whether it is a central reason as opposed to one that may be a cause, but that's incidental or tangential? Isn't that what the Court has articulated as assessed? And is that, I think, am I right that that's a factual determination that we review for substantial evidence? Effectively, whether a particular cause is incidental or tangential as opposed to rising above the level of incidental or tangential? I would agree with that, Your Honor. Okay, and so why is it the case, even if we would look at this record differently, perhaps, and reach a different conclusion, why is it the case that the record compels a finding that the issue here was not incidental or tangential? Okay, so I would look at the Rodriguez-Zuniga v. Garland decision. And in that case, they said a political opinion is not one central reason when it boils down to mere resistance to being robbed. But in this case, in other cases, it's purely economic interest. In this case, there would be no reason for them to call him a traitor, for them to say that he's not joining their cause. He said something to the effect of, when he was seen at the Democratic Central meeting, don't be stupid and get yourself killed. So going to that meeting to help the community which recruited, which hurt FARC recruitment, that was enough for the commander, Vladimir, to say that would get you killed. Back down to the record. My understanding is the very first time that Rivera-Leon was threatened was in August 2021. And to my knowledge in the record, in August 2021, there was no mention of him providing information about CARS or working on CARS for FARC. Is that correct? It was only about his social activities that they perceived to be anti-FARC. Correct. Yeah, that's correct. So the very first time that anyone targeted Rivera-Leon, the only thing that was raised were what his activities were perceived to be anti-FARC. Yeah, that's correct. Yes, thank you. Could we turn to the unable and unwilling prong? Yeah, sure. Do you understand the police to have required a better report? What do you think happened? What is your understanding of why you think the police were unable or unwilling? Right, so I'm looking at page 745 of the record. And in his declaration, he told the police he was kidnapped and blindfolded. Then the police asked him, well, describe your route. And they basically looked at him like, what are you coming here? Are you making this up? You can't describe the route. But he said he was blindfolded. That's just one example. He felt that it was useless to stay there with the police. The police were essentially requiring a kidnap victim who was blindfolded to come and provide them the evidence before they would take the case seriously. And I think there's a case law that says if the police show a lack of will, and in this case, I believe certainly the police were showing a lack of will. This is the functional equivalent of refusing to help. But even if that's not what the court accepts, the standard is whether it's futile and dangerous. And I think that shows strongly that it would have been futile. Essentially, they reported a crime, and the police just gave him a weird look saying, well, bring us evidence of where you were taken when you were blindfolded. So I think that shows futility, certainly. So it seems like you would like us to read the record as if what the police did was just outright refuse to help, that the questions they were asking weren't real questions. It was really just an outright refusal. And I'm just wondering if we're reviewing this for substantial evidence, whether the agency had to understand the record that way. I mean, I understand it is one way to understand the record. But if we're reviewing with deference, why should we think that the agency couldn't view this as really they were asking real questions, and if he had kept trying, maybe they would have helped him, or if he had had more information, they would have helped him. Right. I think this is like the Arathia v. Holder case, which is overruled on other grounds. But in that one, the police there required people to track down their victims. I mean, sorry, they required victims to track down their persecutors. And I think that's like this case. I think the court can find that if the police put the burden on a victim to do the investigation, that that's per se refusing. But even if it's not refusing, it goes to the futility and dangerous, which even if someone never went to the police, if it was futile, which I think this showed it was futile, then that's a ground, and based on the country conditions. And so if it's dangerous or futile, then there's no obligation to try to report, right? But you still need some evidence that the police are unable and unwilling, and you think this record of the country conditions its own would be enough to show that the police are unable and unwilling? Yes, the background documents show that the police collaborate with FARC. In our case law about showing unwilling and unable to report where the petitioner does not report to the police at all, it seems distinguishable from this case where the petitioner did, in fact, go to the police. And as far as I can tell, the only thing that the agency is faulting the petitioner for is not insisting that the police investigate further, right? Correct. Essentially, and to my knowledge, are there any cases, and I'm going to ask opposing counsel this, are there any cases in which we've treated someone who went to the police, reported verbally, but did not essentially demand that the police go further? Did we treat that as categorically as not reporting to the police at all? Right, I'm not aware of any cases with that specific fact pattern, and it's kind of an unusual one. But, right, I'm not aware of any cases on that. Thank you. We have you over your time, so we'll give you two minutes for rebuttal, but let's hear from the government. Good morning, Your Honors. May it please the Court. Remy Derechafodu representing the United States Attorney General. The Court should deny the petition for review. The record does not compel the conclusion that petitioners established eligibility for asylum, withholding of removal, or protection. There are two independently dispositive issues in this case regarding petitioners' claims for asylum and withholding of removal. First, the agency justifiably determined that petitioners failed to establish that the Colombian government is unable or unwilling to protect them from the criminal entity and private individuals that they feared. The record is replete with evidence of the Colombian government's efforts to combat the activities of FARC and similar groups, including investigating, arresting, and prosecuting their members. And just yesterday, Your Honors, a panel of this Court— Sorry, can I interrupt? That would be a reason why, if we treat him as not reporting at all, the country conditions themselves might not be enough. But what if we understand this record as the police refused to help? The record simply does not compel that conclusion, Your Honor, that the police simply refused to help. They just asked for additional information so that they could investigate the case. Wasn't it? I mean, isn't it the case? They quite literally were unwilling to help him with an investigation of the abduction unless he provided information that it was impossible for him to provide. Isn't that quite—at least literally, as far as we use language? They were unwilling to do a further investigation because he could not provide something that was impossible for him to provide? The record, Your Honor, does not dictate that it was impossible for him to provide information because he knew who these FARC members were. He knew the names. But they asked him to describe the path, I believe, of his abduction and the location he'd been taken to, these things, and he was blindfolded, so he explained, you know, that was information he just was not in his possession. So they—didn't they—wouldn't it be that they were unwilling if the police said, we will help you if you provide this information that you can't possibly provide to us? Why is that not sufficient to show they were unwilling to investigate? It is insufficient, Your Honor, because it is not in every case that the police is able to resolve matters that are brought before them without sufficient information. Petitioner could have described the warehouse. There were so many other things that Petitioner had. Petitioner had the names of his abductors. He knew who they were. They had contacted him several times. And none of that information, according to the record, was provided to the police in this case. And was there evidence that the police had informed him that had he—they said, well, is there other information you can provide us that might be sufficient? Or was it on him to understand that even though they said they needed this particular kind of information, he should have tried to provide other information? Yes, Your Honor, that's the government's position, that he should have. He should have persisted, and he could have provided more information to the police on this particular issue. And the country reports actually indicate, based on a decision that was issued just yesterday by a panel of this court, it said that the country conditions evidence showed that the government generally sought to investigate, prosecute, and punish dissident groups, including the FOC. And on that basis, the court ruled that Petitioner in that case had not proven the unable and unwilling prompt of the asylum standard. This is how the IJ decided this case. What I find troubling is that the IJ, even though the record shows that the Petitioner reported what happened to him to the police, the IJ says—essentially cites Castro Perez, a case in which the Petitioner did not report to the police at all. And our line of cases about country conditions reports not being sufficient standing alone, to my knowledge, all involve cases in which the Petitioner did not report to the police at all. So why—are you aware of any case in which, in that line of cases where we say country conditions alone are not sufficient, where the Petitioner doesn't report at all and doesn't show futility of reporting, right, that where the Petitioner in fact went to the police? No, Your Honor, I'm not aware of any specific case regarding that particular line of reasoning, but the court has generally issued—the decisions of the court, especially one that was issued this year in June 2025, stated that Petitioners, whether a victim has reported or attempted to report violence or abuse to the authorities, is a factor that may be considered alongside other relevant record evidence that bears on the question of whether the government is unable or unwilling to control a private persecutor. So it is just one of the factors that needs to be looked at in this case. And in this case, the whole area, the mosaic of information in this case, it's not clear that the police had all the information that it needed to be able to pursue this case on behalf of Petitioner. But the country conditions report, which are very, very—which are important in determining these kinds of cases, the long line of cases, another one issued earlier this year in 2025, looking at the 2020 Department of State Human Rights report for Colombia, said that it reflected that the government of Colombia has taken action against the FARC and government officials who support the FARC, and that the report is similar to the 2021 report in this case. And also in Rojas Galindo, which is a case from 2021, it says that the country reports reflect that FARC-related violence has decreased over 90 percent since 2016 when FARC reached a peace agreement with the Colombian government. I mean, that's not to say that FARC is still not perpetrating crime in Colombia, but the government—that one instance where Petitioner went to the police does not indicate an unwillingness on the part of the government of Colombia to protect. Aside from the unable and unwilling issue, which is dispositive of Petitioner's claims for asylum and withholding of removal, there is also the issue of relocation in Colombia, which Petitioner was not able to prove in this case. And the timeline of Petitioner's encounters with FARC is especially significant. For relocation, the burden was placed on Petitioner, though. So if there were errors on these other issues, then the burden would go the other way. Wouldn't that mean we'd need to remand on relocation? Not—well, if— If you lost on the other issues. Well, with Nexus, there's still the Nexus issue to be considered on the asylum case. The immigration judge did not address Nexus with respect to withholding of removal. So in terms of the issue of asylum, Petitioner would still—the burden would not necessarily shift, because if he cannot prove Nexus, he definitely—the burden would not shift to him. But if there was an error—if there was an error on Nexus on withholding, and we don't agree with you on unwillingness and unable, then we can't affirm withholding based on relocation because the burden was the wrong way? Is that right? Generally, yes, Your Honor. But the regulations from 2022, which is what is—from 2020, which is what is prevailing in this case, says that, yeah, in cases where the applicant has not established past persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him to relocate. But if we think there— Unless the persecution is by a government. So if we think there was an error on the past persecution analysis, we would have to remand relocation also. Well, there are other aspects of past persecution which, of course, were not addressed in this case. For instance, whether the level of harm that Petitioner received rose to the level of persecution. And so there are so many other factors that need to be considered. That might mean that he could win on remand, but I'm still asking. We would need to remand if we thought there was an error on past persecution on withholding, right? Or is there some way that— On withholding of removal, Your Honor, yeah, because the court on the issue of— if the court finds that the government of Colombia was unable, unwilling, then on the issue of withholding, it may have to be remanded, Your Honor. But that is not the only dispositive issue in this case. Regarding the issue of relocation, I would like briefly to have the court look at the timeline of events to show that Petitioner could indeed relocate. Sorry, I just am still confused about what you're arguing about this. So are you trying to argue for relocation that it doesn't matter whose burden it is because he clearly can relocate or something? Are you—because it seems like you're acknowledging we may not need to reach—that relocation really isn't going to help us if the other issues would be an error. Only with respect to withholding of removal, Your Honor, because there's still the nexus issue which covers the asylum claim. If Petitioner—if the court finds that Petitioner was not able to establish nexus, then the asylum claim, you know, stands. Right, but if we agreed with the government on nexus, we still wouldn't reach the relocation issue. So it seems to me that we should focus on the question of whether—of nexus, correct? Yeah, on the issue of nexus, yes, Your Honor. If you look at the timing of all the events of this case, again, it supports the agency's denial of nexus in this case. Let me—I'm sorry to interrupt you. Let me ask you just a question. If I'm looking at the IJ's decision and the IJ says, while Vladimir commented to Respondent Libardo about how his social work interfered with recruiting people to join FARC, there is insufficient evidence to show that FARC would not have harmed Respondent Libardo but for his imputed or actual anti-FARC political opinion. I mean, isn't that the IJ applying a but-for requirement to evaluate whether this was a central reason? And hasn't this court held in Manzano that that's incorrect? And if so, isn't that a legal error that would justify reversal, you know, so that the facts could be reevaluated under the appropriate standard? I don't know, Your Honor, because what the IJ did here ultimately was to rule that there was no nexus in this case. And there is a reason for that. If you look at the record, beginning with when Petitioner lived in El Junco before 2026 and when he was hired by GM, he participated in a corporate social responsibility activities from 2009 to 2015. It wasn't until October 2015 at the very end, just before he left, that FARC delivered a message. But they didn't harm him. There was nothing at all. They just told him, stop participating in these activities. So I guess my question to you is, is this at this point where the IJ seems to base their decision on the failure to show but-for causation? And understandably, a decision was issued before the Manzano decision from this court, which says that but-for causation is not an absolute requirement. So is that a legal error by the IJ with respect to the standard that was being applied? Well, the IJ may have misspoken on that particular issue. But still, the ultimate conclusion of the immigration judge was that the Petitioner did not establish nexus in this case. And the reason for that is because of the factual pattern here in this case, where the first time FARC told him to stop interfering, and he went back to – he was laid off by GM. He went back. Nothing happened to him in El Junco. And then when he returned to Bogota, which he described as a scene of war, he was there for two years, engaged in these corporate social responsibility activities. FARC called him to stop in December 2020 and did nothing. And then two years later, when they figured out that they needed him for something in August of 2021, that was when they now said – accosted him and asked him to help with the automotive parts. And again, looking at the timeline of activities, Petitioner never – they never ever told Petitioner or mentioned again that he should stop his corporate social responsibilities. That went by over a year – two years before. And so, again, each time Petitioner pivoted to his political beliefs, his assailants went back and argued and told him that they needed him specifically for his skills. It was Petitioner alone who kept talking about his skills, his political opinion. His assailants never brought it up as a reason for wanting him. Each time in the record – and there were over five instances between November 2021 and February 2022. And so Petitioner has not shown that there is a nexus between his assailants' conduct and any political opinion or imputed political opinion that he may have had, Your Honors. We have you over your time. Thank you for your argument. Thank you very much, Your Honors. Let's put two minutes on the clock for rebuttal, please. Very briefly, thank you, Your Honors, for giving me some more time. Just to that last issue of nexus, in the case that we've cited, Bargesarian v. Holder – I probably didn't pronounce it right – 592 F. 3rd, 1018. In that case, the reason why I believe this Court should find the record compels that one central reason was political opinion is that Court found that a comment made to him by a law enforcement official defaming and raising his head, quotation, that was sufficient discrete concrete evidence in that case to show nexus. So I would just say it can be a few things. It can even be statements like that that can rise to the level of one central reason. And the cases that didn't find it, like I just discussed, they would just say one ethnic slur by itself doesn't rise to that level. And a quick point about internal relocation. I believe that that issue alone would definitely not be dispositive, even if that issue were found against the petitioner. If past persecution were found and – sorry, if nexus were found and unable and unwilling were found, then humanitarian asylum would have to be considered, and that would have to be remanded on that issue. So internal relocation itself could not be dispositive. And in terms of internal relocation, they told him, no matter where you are, we will find you and kill you. He could not safely relocate. When he went to his mother-in-law's house, that's when they put the graffiti threatening him. And he was only there a short period of time, constantly moving. So I would submit that it was not safe to relocate. Okay. And I'll submit if there's no other questions. Thank you. Thank you both sides for the arguments. This case is submitted.
judges: FRIEDLAND, SUNG, Pitts